Buford, J.
 

 Appellees exhibited bill of complaint intthe circuit court of Polk County to foreclose a mortgage. John
 
 *1578
 
 P. Little & Son filed an answer seeking affirmative relief. The answer was amended and the amended answer was again amended. Answer of other parties was filed, but it is not necessary to discuss the. other pleadings here.
 

 Testimony was taken and on final hearing decree was in favor of Bryan.
 

 The salient facts in this case are that Bryan sold to Fresh, Bender and Appleyard a certain piece of property' for which they paid a part cash and gave notes for the balance of $82,240.00, secured by a mortgage. 'The mortgage, amongst other things, contained the following clause:
 

 “ It IS STIPULATED AND AGREED between the parties hereto that if the mortgagors shall desire to permanently improve said property, and shall have first discharged the mortgage now encumbering the same, which is held by the Metropolitan Life Insurance Company, as well as any other mortgage, which may have been placed by them upon the premises, that the mortgagee, or any assignee thereof, shall permit this mortgage to be satisfied of record, and shall then take back a mortgage for the unpaid balance of the mortgage indebtedness hereby secured, which shall be subordinate to the lien of such new mortgage,' as shall be placed upon the premises by the purchasers for securing the costs of such improvements. PROVIDED, said mortgage shall not exceed the actual amount expended for said improvements.”
 

 Thereafter, Bender conveyed his one-fifth interest in the premises to Fresh. Thereafter^ Appleyard, being deceased, his widow having taken, his interest in the property under a will, she and Fresh conveyed, the property to Oates and, thereafter, Oates conveyed to Melton and Rodgers. Melton and Rodgers then conveyed by ninety-nine year lease to
 
 *1579
 
 John H. Hill. It was understood that this lease would become the property of a corporation to be known as John H. Hill Company, or by a similar name. Hill entered into a contract with John P. Little
 
 &
 
 Son for the erection of a •building on the lot, it being understood at the time the contract was entered into that Hill would procure a loan sufficient to pay the contract price of the building. Hill failed to get the loan and, therefore, could not pay Little. It is alleged that Little had commenced work under his contract and that under the terms of his contract Hill was indebted to Little in the sum of $18,363.56 when Little abandoned the contract because of the non-payment of sums due him thereon and filed a notice of lien in the office of the clerk of the circuit court.
 

 The lease from Melton and Rodgers to Hill provides, amongst other things, as follows:
 

 “8. Not later than the 15th of October, A. D. 1926, the LESSEE will begin or cause to' be begun on said premises the erection of a building to be located entirely upon said premises, which at the time of completion shall have a fair cost and value of not less than $125,000.00 which building shall have been completed not later than the first day of May, 1927, free of liens or rights thereto and of claims of contractors, sub-contractors, mechanics, laborers or materialmen and any and all other claims or liens, except a mortgage given to some firm, corporation or individual for money used only in the construction of said building.”
 

 A supplemental agreement was entered into between Melton and Rogers first parties and Hill as second party in which, amongst other things, the following stipulations are found:
 

 
 *1580
 
 “IT IS FURTHER AGREED that the second party contemplates the erection of a building on the premises leased under the ninety-nine year lease herein referred to, and in order to finance said building it shall be necessary for the second party to place a mortgage on said premises. It is not known at this time just what the amount of the said mortgage will be, but it is to be in as large a sum as can be had and on the most favorable terms possible, and the conditions and terms of the mortgage to be given are at this time unknown, but whenever the second party is ready to place said mortgage upon said premises, the first parties and their wives agree to join in the execution of said mortgage so as to convey both the interests of the Lessors and Lessee, but it is further agreed that the entire proceeds received on said mortgage loan will be placed with the Central Bank
 
 &
 
 Trust Company, as Trustee, or with some other trust company mutually agreeable to all parties, to be by said trustee paid out and disbursed to the proper parties entitled to receive the same as the work progresses, and all of the funds received from the said mortgage will be used in the improvement of said property, less reasonable commissions or fees incurred in obtaining the mortgage loan.. * * *
 

 “At the time the second party desires to place a loan on the property described in said ninety-nine year lease, as herein stipulated, it will be necessary for the said F. D. Bryan, the holder of the mortgage now on the property, to either release his mortgage and take back a second mortgage, subject to the mortgage to be placed on the property by the second party, or it will be necessary to obtain what is usually known as a subrogation or subordination agreement from the
 
 *1581
 
 said F. D. Bryan subordinating his mortgage to that of the first mortgage to be placed upon the property, and the first parties now agree and obligate themselves that when the second party. shall desire to place said mortgage on the property described in said, lease, they will, at their own expense, obtain such subordination agreement from the said F. D. Bryan, or such other agreement as counsel approving the first mortgage loan may require of the said F. D. Bryan and his wife, or either of them, to sign.”
 

 It appears that Bryan had full knowledge of the dealings between the parties. Little based his claim of right to a prior lien upon the above quoted provision contained in the Bryan mortgage. The contention is that inasmuch as Bryan had agreed in his mortgage that when a loan was procured with which to construct a building as contemplated upon the property, the first mortgage would be surrendered and a second mortgage taken, which would be subsequent and inferior to the mortgage given to secure the payment of the loan of the money with which to pay for the building, that upon Little performing labor and furnishing the material for the construction of a building on the property under the contract with Hill' a lien was thereby acquired superior to that held by Bryan under the terms of the first mortgage.
 

 The court below held against this contention and, we think, properly so. The only condition under which Bryant agreed to surrender his first lien was that a loan sufficient to erect such a building as was contemplated by the parties at the time the lease should be procured and that the money derived from such loan should be placed where it wuuld be expended for the complete improvement on the property. Bryan was not obligated to procure the loan, nor to take any action in regard thereto,
 
 *1582
 
 except to allow a mortgage securing the loan to become a lien prior to his first mortgage lien. The conditions stipulated in the Bryan mortgage were never met and Bryan was in no way responsible for the building contract having been entered into between Hill and Little before the loan had been procured with which to pay the contract price.
 

 The decree of the chancellor should be affirmed and it is so ordered.
 

 Affirmed.
 

 Whitfield, P. J. and Strum, J., concur.
 

 Terrell, C. J., and Ellis and Brown, J. J., concur in the opinion and judgment.