A. B. JOHNSON, trading and doing business as Johnson Electric Company, et al., v. FLORIDA BANK AT ORLANDO, a Florida Banking Corporation, et al.

13 So. (2nd) 799                     January Term, 1943
June 4, 1943                              Division B
Rehearing Denied June 22, 1943

*George P. Garrett,* for appellants.

William N. Ellis, for appellees.

THOMAS, J.:

In order to finance the construction of a building until such time as a loan from a federal savings and loan association, approved by the Federal Housing Administration, could be consummated the owners executed to a bank a mortgage to secure a promissory note for $6750, payable on demand. The mortgage contained a provision that it was "executed for the purpose of securing the payment of loans made and from

time *to time to be made* . . . the aggregate amount of which *shall at no time exceed"* the amount shown in the note. (We have furnished the emphasis.)

The instrument was filed for record 21 January 1941. The preceding day certain contractors, materialmen and laborers engaged by the owners to erect the building executed a subordination agreement in which it was recited that application had been made for the loan, and stipulated that the signers for a stated consideration "and for the purpose of inducing the said Bank to make said loan [did] release, waive and subordinate all rights, claims, demands and liens of whatsoever nature" which they might then have or acquire "by virtue of the labor and materials furnished and to be furnished in connection with the construction of said building . . . to the lien of [the] mortgage . . . ."

Two of the signatories, one an electrician, the other a materialman, appealed from the final decree foreclosing the mortgage.

In the course of this opinion we will refer to the salient facts, but it seems important now to point out that only $5750 was actually lent by the bank to the borrowers. All this money was expended in the construction before the progress of the work was interrupted. Whether the discontinuance was the result of abandonment by the owners, the ill health of one of them or progress unsatisfactory to the bank, is not clear; however, we are not convinced that the chancellor erred when he, in effect, found that the suspension was not chargeable to the bank.

One contention of the appellants is that the consideration for the agreement, to which the mortgagee was not a party, failed because the full amount of the note was not actually advanced. It is patent, though, from the reference in the agreement to the transaction between the owners and the bank that those signing it were thoroughly familiar with the negotiation for the loan, an ingredient of which was, as we have noted, that the indebtedness was not fixed, but would be limited to $6750. This indicated that the loan might fluctuate and the provision is not synonymous with a promise to advance the exact larger amount, much less the

total sum required to complete the structure. The significance of this interpretation will become apparent as we deal with appellants' further contentions.

It is said in their brief that the bank by its failure to deliver the higher amount "left the building partially completed and . . . materialmen's bills unpaid." This statement is based on a construction of the evidence which the chancellor rejected. Evidently, he found from testimony, which he was thoroughly justified in believing, that the bank was not responsible for the plight of appellants. When the work ceased naturally the bank was warranted in discontinuing its payments under the mortgage and preventing the consequent increase of its investment, particularly when it is remembered that sums to that time advanced had been actually expended in the building.

In short appellants argue that the condition for execution of the agreement failed, hence the mortgage did not have priority over their liens but we do not find in the record support for this contention. There was no promise by the bank to them that the full amount would be paid or that the building would be completed. There was no breach on its part of any agreement. It simply sought the foreclosure of a mortgage to secure the payment of money it had advanced to the mortgagor up to the time the construction was discontinued. We do not recognize the analogy between facts here and those forming the bases for decisions in Little v. Bryan, 100 Fla. 1577, 131 So. 652, and Bruce Const. Corporation v. Federal Realty Corp., 104 Fla. 93, 139 So. 209.

Appellants not only urge failure of consideration but insist that the bank should be required to pay over an additional one thousand dollars before being allowed to proceed with its foreclosure, this sum to be disbursed to appellants "on account of their . . . lien claims." If this contention were upheld the lender would be required to deliver to these particular claimants one thousand dollars more than was represented in the actual building and, despite the terms of what we consider an unconditional waiver, the bank would therefore be penalized to that extent in order for its mortgage to retain the status of a first lien. To state it otherwise, such

a ruling would have the practical effect of making the liens first ones to the extent of the required payment.

Another question posed by one of the appellants relates to the obligation of the bank to discharge his claim because of a promise based on a telephonic conversation between his bookkeeper and an officer of the bank. In view of our interpretation of the efficacy of the subordination agreement we find that this conversation did not place this appellant in an advantageous position. It was vague in the extreme, occurred after the work had been done and the materials furnished and the appellant's own witness, who related it, admitted that nothing was furnished by her employer in reliance upon the statement of the representative of the bank that the money was available to pay for labor and materials.

The final question deals with the failure of the court to enter judgments in favor of the appellants against the codefendants, the owners. It is asserted by the former that under Section 5396 (29), Permanent Supplement, C.G.L., 1927, Section 84.29, Florida Statutes 1941, the chancellor should have allowed judgments to be entered even if they failed in establishing the priority of their liens. The appellee-bank dismisses the contention with a reference in their brief to a paper claimed to have been signed by one of the owners waiving exemption rights under The Soldiers' and Sailors' Civil Relief Act of 1940, and with the statement, also in the brief, that counsel for it and the appellants agreed to the waiver whereupon the court was not requested to enter judgments. We have not found the instrument in the record nor any recital therein indicating whether or not the court was requested to enter the judgments. The final decree is silent on the subject and we are not advised whether any sale has ever been held pursuant to the decree, therefore, whether any surplus is available to satisfy the appellants' liens. In this situation, and because of our view that the chancellor ruled correctly on the matter of the priority of the mortgage of the bank over the liens of the appellants it is our conclusion that the final decree should be affirmed but without prejudice to appellants' right to an adjudication of their claims to any surplus after satisfaction of appellee's mortgage or to appli-

cation for entry of personal judgments against the co-defendants, the owners.

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.